

# THE COMMONWEALTH OF MASSACHUSETTS
## OFFICE OF THE ATTORNEY GENERAL
### ONE ASHBURTON PLACE
### BOSTON, MASSACHUSETTS 02108

ANDREA JOY CAMPBELL
ATTORNEY GENERAL

(617) 727-2200
www.mass.gov/ago

March 17, 2026

**<u>BY ELECTRONIC FILING</u>**

Suzanne Frisch, Courtroom Clerk
Harold D. Donohue Federal Building and U.S. Courthouse
595 Main Street
Worcester, MA 01608

Robert M. Farrell, Clerk of Court
United States District Court
District of Massachusetts
1 Courthouse Way
Boston, MA 02210

> **Re:** ***<u>Carlos Sebastian Zapata Rivera v. David Wesling, et al.</u>*, No. 4:26-cv-40061**
> **Amicus Letter of the Commonwealth of Massachusetts – In Support of**
> **Neither Party – <u>Leave to file granted on March 17, 2026</u>**

Dear Clerk Farrell,

The Commonwealth of Massachusetts (through its Attorney General) hereby submits this amicus letter, not in support of either party, but to emphasize the importance of First Amendment protections—including the right to access the courts to petition grievances against the government—for all of the Commonwealth's residents, including noncitizens. The Attorney General takes no position on the questions of whether the petitioner, Mr. Zapata, is in custody or has other available remedies for purposes of habeas relief, or of what relief should be ordered if the petition is granted. The Attorney General writes only to underscore this critical point: any retaliatory government action to punish individuals for exercising their constitutional right to access the courts threatens the rights of all Massachusetts residents, citizens and noncitizens alike.

The Commonwealth of Massachusetts is a sovereign state with a strong interest in protecting the rights of its residents. This includes noncitizen residents, who are entitled to First Amendment and other core constitutional protections. *E.g.*, *United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990); *Bridges v. Wixon*, 326 U.S. 135, 148, (1945); *see also Am. Ass'n of Univ. Professors (AAUP) v. Rubio*, 802 F. Supp. 3d 120, 181-84  (D. Mass. 2025) (explaining and confirming ruling that "noncitizens have at least the core First Amendment right to political speech without reprisal"). As the Commonwealth's chief law officer, the Massachusetts Attorney General has issued public legal guidance on the rights of immigrants and noncitizen residents, including First Amendment rights and protections from retaliation against individuals for asserting their

Robert M. Farrell, Clerk of Court
***Carlos Sebastian Zapata Rivera v. David Wesling, et al.***, **No. 4:26-cv-40061**
March 17, 2026

rights.[1] On behalf of the Commonwealth, the Massachusetts Attorney General has also submitted amicus briefs in this Court and others in cases where the rights of its residents and municipal subdivisions have been threatened by the federal government, in circumstances implicating important state interests.[2]

Consistent with these public documents and filings, the Commonwealth and its Attorney General have a strong interest in ensuring that Massachusetts residents are free to exercise their constitutional rights, including their right to petition the government, without fear of retaliation. This basic premise—which serves as a core of our democratic republic—has been challenged in this case. Indeed, the alleged facts underlying this petition may be yet another example of the Trump Administration's unlawful attempts to wield immigration enforcement as a weapon against Massachusetts residents.[3] Such unlawful retaliatory actions inflict profound harm across Massachusetts unless checked and will widely chill the exercise of core First Amendment rights, including the right to petition.

**Right to Petition**

The First Amendment to the Constitution provides that "Congress shall make no law ... abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and *to petition the Government for a redress of grievances*." U.S. Const. amend. I (emphasis added). This right to petition the government is a cornerstone of our democratic system. *See, e.g.*, *Thomas v. Collins*, 323 U.S. 516, 530 (1945) (right to petition has "a sanctity and a sanction not permitting dubious intrusions"); *United States v. Cruikshank,* 92 U.S. 542, 552 (1876) (declaring the right to petition implicit in "[t]he very idea of government, republican in form"); *Powell v. Alexander*, 391 F.3d 1, 16 (1st Cir. 2004) ("For decades, the Supreme Court has consistently recognized the right to petition all branches of the government, including the courts, for redress of grievances as among the most precious of the liberties safeguarded by the Bill of Rights.") (citation and internal quotation marks omitted).

---

[1] *See* Office of the Attorney General, *Resources for Immigrants in Massachusetts*, https://www.mass.gov/info-details/resources-for-immigrants-in-massachusetts (last visited March 16, 2026); Office of the  Attorney General, *Anti-Discrimination Guidance* (Sept. 29, 2025), https://www.mass.gov/doc/anti-discrimination-guide-english; Office of the  Attorney General,  *Information for immigrant workers about their rights*, https://www.mass.gov/info-details/information-for-immigrant-workers-about-their-rights (last visited Mar. 16, 2026).

[2]  *See, e.g.*, *AAUP*, 802 F. Supp. 3d 120; *United States v. City of Boston*, No. 1:25-cv-12456-LTS, Doc. No. 44 (D. Mass. Nov. 25, 2025); *Doe v. U.S. Dep't of Homeland Sec.*, No. 2:25-cv-00240 (D. Vt. Feb. 23, 2025).

[3] *See*, *e.g.*, *AAUP*, 802 F. Supp. 3d at 189-90 (concluding that the Trump Administration's policy of ideological deportations was "intentionally viewpoint-discriminatory" and that the policy's "manner and method" of execution were adopted at least "in part intentionally to chill the speech of other" lawfully present noncitizens on college campuses).

2

Robert M. Farrell, Clerk of Court
***Carlos Sebastian Zapata Rivera v. David Wesling, et al.***, **No. 4:26-cv-40061**
March 17, 2026

The right to petition "is generally concerned with expression directed to the government seeking redress of a grievance." *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 388 (2011). It is a vehicle that allows "citizens to express their ideas, hopes, and concerns to their government and their elected representatives," *id.*, and it includes the right of access to the courts. *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) ("The right of access to the courts is indeed but one aspect of the right of petition."); *see* James E. Pfander, *Sovereign Immunity and the Right to Petition: Toward a First Amendment Right to Pursue Judicial Claims Against the Government*, 91 Nw. U. L. Rev. 899, 906 (1997) (arguing that "the Petition Clause guarantees the right of individuals to pursue judicial remedies for government misconduct"). Indeed, an individual has a right "to obtain access to the courts without undue interference" so long as the claim has "a reasonable basis in law or fact." *Snyder v. Nolen*, 380 F.3d 279, 291 (7th Cir. 2004) (*per curiam*), *overruled on other grounds, Pearson v. Callahan*, 555 U.S. 223 (2009).

Petitions to the courts can be important tools for addressing "matters of great public import." *Borough*, 564 U.S. at 397. For example, "[i]n the context of the civil rights movement, litigation provided a means for "the distinctive contribution of a minority group to the ideas and beliefs of our society." *Id*. (quoting *NAACP v. Button,* 371 U.S. 415, 431 (1963)). And litigation itself can be a "vehicle for effective political expression and association, as well as a means of communicating useful information to the public." *Id*. (quoting *In re Primus,* 436 U.S. 412, 431 (1978)).

### Allegations of Retaliation

Mr. Zapata alleges that federal immigration officials took increased enforcement actions against him, at least in substantial part because he sued them and sought legal redress for an incident on November 6, 2025, in which he alleged that ICE agents used excessive force and strangled him unconscious. ECF No. 1 at 1-3, 5-14. These allegations represent a serious threat and a continued concern that federal officials are weaponizing immigration enforcement as a form of retaliation for those utilizing their First Amendment rights in a way the federal government does not like. If Mr. Zapata's claims are substantiated by this court, the government's actions would send a chilling message to noncitizens and other residents in Massachusetts who may seek to petition the government for a redress of grievances, or engage in other speech or activity protected by the First Amendment: if the federal government is offended, embarrassed, angered, inconvenienced, or otherwise displeased by your speech or petitioning, it may use its authority to punish you.

Mr. Zapata is part of a vulnerable population, as he is an immigrant in the United States, during a time when the federal government has attacked, vilified, degraded, and punished law-abiding, noncitizens whom it believes (without evidence) cause harm to this country. The Trump Administration already has a history of punishing noncitizens who utilize their First Amendment rights to express opinions and beliefs with which the President disagrees. It has, for example, revoked student visas, detained student activists, and barred international students for engaging in

3

Robert M. Farrell, Clerk of Court
***<u>Carlos Sebastian Zapata Rivera v. David Wesling, et al.</u>*, No. 4:26-cv-40061**
March 17, 2026

protected speech.[4] It may now be targeting those, like Mr. Zapata, who exercise their First Amendment right to petition the government to seek accountability for ICE agents' alleged aggressive enforcement tactics.

The concern that the Trump Administration is seeking retaliation through severe immigration enforcement actions, including restrictions on the rights and liberty interests of individuals like Mr. Zapata, is amplified where this case has already garnered significant media attention, with more likely to follow.[5] The risk of deterring similar protected petitioning activity in the future is no mere speculation. *Cf. AAUP*, 802 F. Supp. 3d at 194 (finding that federal officials acted unlawfully to target certain noncitizens for deportation "primarily on account of their First Amendment protected political speech," and that "the effect of these targeted deportation proceedings continues unconstitutionally to chill freedom of speech to this day"). And any ambiguity in the precise reason for Mr. Zapata's punishment would not necessarily mitigate, but

---

[4] Two cases are worth highlighting. On March 8, 2025, ICE officials arrested Mahmoud Khalil, a lawful permanent resident and recent graduate of Columbia University's School for International and Public Affairs, based on his involvement in protests criticizing Israel and its war in Gaza. After Mr. Khalil's arrest, President Trump threatened: "This is the first arrest of many to come." Melissa Quinn, *Trump says arrest of Palestinian activist who helped lead Columbia protests is first of "many to come"*, CBS News (March 10, 2025), https://www.cbsnews.com/news/trump-mahmoud-khalil-ice-columbia-university/. Similarly, on March 25, 2025, plain-clothes ICE agents in Somerville, Massachusetts surrounded Rümeysa Öztürk—an international Ph.D. student at Tufts University—and took her into immigration custody, all apparently for co-authoring an op-ed in the school newspaper. *Ozturk v. Trump*, 777 F. Supp. 3d 26, 29-33 (D. Mass. 2025). Ms. Öztürk, like other students across the country, was subjected to prolonged immigration detention as part of the Trump Administration's effort to use immigration laws to punish noncitizen students associated with pro-Palestinian views with which the Administration disagreed. *See id.* at 33 ("Ozturk's case is one of several cases in which the Trump Administration has implemented these Executive Orders by revoking the immigration status of non-citizens who expressed support for Palestine.").

[5] *See* David Bienick, *Husband speaks out after wife taken by ICE agents in hostile Fitchburg arrest*, WCVB (Nov. 7, 2025), https://www.wcvb.com/article/husband-wife-taken-ice-hostile-fitchburg-arrest/69290013; Tonya Alanez, *Fitchburg man who suffered seizure during ICE encounter sues, alleging excessive force*, Bos. Globe (Dec. 15, 2025), https://www.bostonglobe.com/2025/12/15/metro/fitchburg-man-seizure-ice-lawsuit/; Peter Currier, *Fitchburg immigrant sues ICE, alleging agent used banned chokehold during arrest: Carlos Zapata Rivera ordered to check in with ICE days after filing lawsuit*, Lowell Sunn (Dec. 18, 2025), https://www.lowellsun.com/2025/12/18/fitchburg-immigrant-sues-ice-alleging-agent-used-banned-chokehold-during-arrest/; Molly Farrar, *Fitchburg father who appeared to seize while being choked by ICE agent sues agent*, Boston.com (Dec. 30, 2025), https://www.boston.com/news/local-news/2025/12/30/fitchburg-man-appeared-to-sieze-choked-sues-ice-agent/.

4

Robert M. Farrell, Clerk of Court
***Carlos Sebastian Zapata Rivera v. David Wesling, et al.*, No. 4:26-cv-40061**
March 17, 2026

might only serve to deepen the potential chilling effect here. If noncitizens and other disfavored residents are unable to ascertain or accurately evaluate the real risk of retaliation for certain kinds of speech or petitioning activity critical of the government, that is itself problematic, as "[u]ncertain meanings inevitably lead citizens to steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked." *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972) (cleaned up). That is especially so where the consequences are so severe. Potential sanctions up to and including arrest, imprisonment, and deportation threaten to deprive individuals and families of life, liberty, property, and "all that makes life worth living." *Ng Fung Ho v. White*, 259 U.S. 276, 284 (1922).

**Protecting Massachusetts Residents**

Massachusetts has a strong interest in supporting its noncitizen population. Noncitizen residents contribute substantially to the Commonwealth's economic, cultural, and community vitality. They generate significant tax revenue, fill critical workforce gaps, and start businesses that create jobs. More than a million immigrant residents live in Massachusetts, making invaluable contributions to their communities.[6] The Commonwealth's obligation to these residents extends, at a minimum, to ensuring their access to constitutional rights to which they are entitled.

But importantly, it is not only immigrants and noncitizens whose First Amendment rights would be threatened by such a deterrent effect as described above. Other residents could also face the prospect of retribution for speech, petitioning, reporting, advocacy, or legal actions that might upset federal government officials. U.S. Citizens have already been swept up and harmed by this administration's immigration enforcement operations, and they are among those who have reportedly been targeted for their political speech, advocacy, and activism.[7]

---

[6] *See* Am. Immigr. Council, Immigrants in Massachusetts (2023), https://map.americanimmigrationcouncil.org/locations/massachusetts/. In 2023, immigrants in Massachusetts made up approximately 18% of the Commonwealth's population, 22% of its labor force, 27% of its entrepreneurs, and 39% of its health aide workers. *Id.* They generate billions of dollars in economic activity and tax contributions for the Commonwealth. *Id.*

[7] *See*, *e.g.*, Kat Lonsdorf, et al., *ICE has spun a massive surveillance web. We talked to people caught in it*, NPR (March 5, 2026) https://www.npr.org/2026/03/04/nx-s1-5717031/ice-dhs-immigrants-surveillance-confrontation-deportation-mobile-fortify; *How ICE Went Rogue*, Am. Immigr. Council (Feb. 11, 2026), https://www.americanimmigrationcouncil.org/fact-sheet/ice-cbp-legal-analysis/; Rashawn Ray & Gabriel R. Sanchez, *ICE expansion has outpaced accountability*, Brookings Inst. (Jan. 26, 2026), https://www.brookings.edu/articles/ice-expansion-has-outpaced-accountability-what-are-the-remedies/; Faiza Patel & Matthew Ruppert, *ICE Wants to Go After Dissenters as well as Immigrants*, Brennan Center for Justice (Nov. 21, 2025), https://www.brennancenter.org/our-work/research-reports/ice-wants-go-after-dissenters-well-immigrants; Nicole Foy, *We Found That More Than 170 U.S. Citizens Have Been Held by Immigration Agents*, ProPublica (Oct. 16, 2025), https://www.propublica.org/article/immigration-dhs-american-citizens-arrested-detained-against-will.

Robert M. Farrell, Clerk of Court
***Carlos Sebastian Zapata Rivera v. David Wesling, et al.***, **No. 4:26-cv-40061**
March 17, 2026

The Commonwealth and its Attorney General seek to foster an environment of trust and support between government and civil society in which all residents—including citizens, noncitizens, immigrants, and their broader communities—feel empowered to peacefully assert their rights, petition their government, and access the justice system. Beyond allowing greater enjoyment of constitutional rights and access to justice, social science research suggests that such environments also benefit public health and safety.[8] If Massachusetts residents (regardless of their immigration or citizenship status) believe that peacefully exercising their rights to free speech and to petition their government could lead to retaliatory punishment by federal officials, public trust in the judicial system itself is eroded.

\*    \*    \*

The Attorney General of Massachusetts submits this letter to ensure that the First Amendment right to petition the government and courts for grievances, without fear of retaliation, is safeguarded for all residents of the Commonwealth.

Respectfully submitted,

THE COMMONWEALTH OF
MASSACHUSETTS

By and through its attorneys,

ANDREA JOY CAMPBELL
  *Massachusetts Attorney General*

*/s/ Jared B. Cohen*
Jared B. Cohen, BBO No. 689217
  *Assistant Attorney General*

---

[8] *E.g.*, Reva Dhingra et al., *Immigration Policies and Access to the Justice System: The Effect of Enforcement Escalations on Undocumented Immigrants and Their Communities*, 44 Pol. Behav. 1359, 1361 (2022); Ricardo D. Martínez-Schuldt & Daniel E. Martínez, Immigration Sanctuary Policies and Crime-Reporting Behavior: A Multilevel Analysis of Reports of Crime Victimization to Law Enforcement, 1980 to 2004, 86 Am. Socio. Rev. 154, 170 (2021) Daniel E. Martínez et al., *Providing Sanctuary or Fostering Crime? A Review of the Research on "Sanctuary Cities" and Crime*, 12 Socio. Compass, Jan. 2018, at 7-10 (surveying literature); Elizabeth Fussell, *The Deportation Threat Dynamic and Victimization of Latino Migrants: Wage Theft and Robbery*, 52 Socio. Q. 593, 610 (2011) (describing how labor exploitation increases when migrant workers fear that interactions with the court and justice system may result in deportation).

Robert M. Farrell, Clerk of Court
***Carlos Sebastian Zapata Rivera v. David Wesling, et al.***, **No. 4:26-cv-40061**
March 17, 2026

Tasha J. Bahal, BBO No. 675935
  *Deputy State Solicitor*
Elizabeth D. Matos, BBO No. 671505
  *Chief, Civil Rights Division*
One Ashburton Place
Boston, MA 02108
(617) 963-2833
jared.b.cohen@mass.gov

## CERTIFICATE OF SERVICE

     I, Jared B. Cohen, hereby certify that I have this day, March 17, 2026, served the foregoing document upon all parties of record, by electronically filing to all ECF-registered parties and by sending a copy, first-class mail, postage prepaid to all unregistered parties.

/s/ *Jared B. Cohen*
Jared B. Cohen