# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

CARLOS SEBASTIAN ZAPATA RIVERA,

      Petitioner,

v.

DAVID WESLING, Acting Field Office Director,
*et al.*

      Respondents.

C.A. No. 26-40061-MRG

## PETITIONER'S STATUS REPORT
## AND OPPOSITION TO FURTHER DISCOVERY EXTENSION

Shortly before noon on Tuesday, April 14, the government called Mr. Zapata Rivera out of the blue and ordered him to report to ICE's Burlington office by 3pm. *See* Ex. 1 (redacted call log). Mr. Zapata Rivera left his job (he works as a machinist) and rushed to Burlington. One of his immigration counsel similarly dropped everything and met him there. *See* Third Rosenbaum Decl. ¶3.

At Burlington, ICE removed Mr. Zapata Rivera's GPS bracelet, told him he was disenrolled from ISAP, and scheduled his next check-in for 2027. *See id.* ¶¶6-8. ICE did not give either Mr. Zapata Rivera or his immigration counsel any explanation for these actions. *See id.* ICE did not provide them with any documentation of what it was doing (besides a notice of the next check-in date) and made no promises that it would not reverse course and restore these conditions at a later time. *See id.* ICE then almost immediately filed a motion requesting that the

1

Court relieve it of its Court-ordered obligation to produce discovery this Friday, *see* Apr. 14, 2026 Elec. Order (D.E. 33), and terminate this habeas petition.

Mr. Zapata Rivera is of course very pleased that these unlawful conditions have been removed. He is also grateful to the Court for its careful attention to this case over the last several months. However, ICE's actions appear to be a calculated attempt to manufacture mootness in order to avoid disclosure of its documents and ultimately evade the Court's review of its actions.

That outcome would leave Mr. Zapata Rivera in an untenable situation: If the case is dismissed now without a final decision, there will be nothing stopping ICE from once again retaliating against Mr. Zapata Rivera by re-imposing these exact same conditions—or worse, arresting him—five minutes after the case is closed, or any time thereafter. And given ICE's practice of rapidly transferring detainees to other states, Mr. Zapata Rivera might be outside of Massachusetts—and thus likely beyond this Court's habeas powers—before anyone even knows he's been arrested.

These concerns are particularly pronounced where ICE's campaign of retaliation was triggered by Mr. Zapata Rivera's protected petitioning activities in an ongoing lawsuit. Mr. Zapata Rivera has already made out a prima facie case of retaliation against his protected litigation activities to date. He will certainly undertake more protected activities in that same lawsuit in the very near future, including serving the defendant agent, opposing any motion to dismiss, and hopefully pursuing civil discovery. He is thus at continuing and elevated risk of harm.

The "voluntary cessation" doctrine was created to solve this exact problem. The doctrine recognizes that "a defendant might suspend its challenged conduct after being sued, win dismissal, and later pick up where it left off; it might even repeat this cycle as necessary until it achieves all of its allegedly unlawful ends." *See FBI v. Fikre*, 601 U.S. 234, 241 (2024) (internal quotation

marks omitted).  Consequently, a defendant cannot "automatically moot a case by the simple expedient of suspending its challenged conduct after it is sued." *See id.* (internal quotation marks omitted).  Rather, the party asserting mootness bears "[t]he heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again." *See Friends of the Earth v. Laidlaw Environ. Svcs.*, 528 U.S. 167, 189 (2000); *Presidents' Alliance on Higher Educ. & Imm. v. Noem*, C.A. No. 25-11109-PBS, 2026 WL 788185, at *10 (D. Mass. Mar. 20, 2026) ("Put simply, 'a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur'" (quoting *Corrigan v. Boston Univ.*, 98 F.4th 346, 353 (1st Cir. 2024)).  The defendant cannot meet this burden if "(1) 'a defendant voluntarily ceases the challenged practice in order to moot the plaintiff's case' and (2) 'there exists a reasonable expectation that the challenged conduct will be repeated after the suit's dismissal." *See Presidents' Alliance*, 2026 WL 788185, at *10 (quoting *Nat'l Assoc. of Gov't Employees v. Yellen*, 120 F.4th 904, 912 (1st Cir. 2024)).  This doctrine applies in the habeas context where the petitioner is released but remains vulnerable to re-detention if the case is dismissed.  *See, e.g.*, *Jimenez v. Nielsen*, 334 F. Supp. 3d 370, 393 (D. Mass. 2018) (finding defendant failed to meet its burden to show it is "absolutely clear" that petitioners could not "reasonably expect" ICE to re-detain them where ICE did not disclaim intention to re-detain).

Here, the government fails both prongs of the test.  As to the first prong, the Anzelmo Declaration accompanying the motion to dismiss (D.E. 34-1) does not attest to *any* reason for ceasing the challenged conduct, so clearly the government has not proven a reason that is independent of the litigation.  And there is strong circumstantial evidence that the government did release Mr. Zapata Rivera to moot the case.  The parties had agreed that the government would

3

produce its discovery on Monday, April 13.  *See* Opp. to Disc. Ext. (D.E. 32) at 1.  When Monday arrived, however, the government moved to extend that deadline to Friday, April 17.  *See* Ext. Mot. (D.E. 31).  Petitioner agreed to an extension to Tuesday, April 14, but otherwise opposed. *See* Opp. to Disc. Ext. (D.E. 32) at 1.  When the Court did not immediately grant the government's requested extension beyond Tuesday, the government cold-called Mr. Zapata Rivera in the middle of the workday and ordered him to ICE on roughly three-hours' notice.  *Compare* Ex. 1 (call log showing ICE's calls to Mr. Zapata Rivera at 11:42 and 11:43 a.m.), *with* Apr. 14, 2026 Elec. Order (D.E. 33) (granting government's extension about an hour and a half later at 1:10 p.m.).  The government then almost immediately moved to terminate the case.

As to the second prong, there is clearly good reason to believe that the challenged conduct will be repeated.  The Court has already ruled that Mr. Zapata Rivera has "plausibly alleged a potential First Amendment retaliation violation" by the government, *see* Mar. 19, 2026 Tr. at 28, and the government has never offered any evidence of any non-retaliatory motive.  *See* Mar. 19, 2026 Tr. at 27 (convening evidentiary hearing to explore "the central issue of this petition: How respondents intend to meet their burden of demonstrating that the challenged conditions would have been imposed in the manner they were imposed, irrespective of Petitioner's protected activity").  Mr. Zapata Rivera thus remains at risk for retaliation, and he will continue to undertake protected acts in the civil litigation that may trigger additional retaliatory animus and action.  The Anzelmo Declaration (D.E. 34-1) does nothing to assuage these concerns, as it does not disclaim any intention to reimpose the conditions or undertake additional retaliatory acts.

Accordingly, Petitioner proposes the following:

1.  Discovery should continue on the current schedule, which has already been extended.

    Discovery is necessary for Petitioner to prepare for the evidentiary hearing.

Additionally, because the discovery is focused on the "issue of retaliatory motive for [Mr. Zapata Rivera's] First Amendment claim," *see* Mar. 19, 2026 Elec. Order (D.E. 23), the existence or nonexistence of that motive as shown in the discovery is likely to bear on the mootness issues—specifically, whether the challenged conduct is likely to recur. *See Presidents' Alliance*, 2026 WL 788185, at *10.

2. Petitioner requests an opportunity to fully respond to the Government's motion to dismiss, including to fully brief the voluntary cessation mootness exception. Certain of Petitioner's counsel are not available next week due to the school vacation week, and if possible Petitioner would request to respond by Wednesday, April 29.

3. The Court could consider postponing the evidentiary hearing to a date in May convenient for the Court.

Respectfully submitted,

*/s/ Daniel L. McFadden*
Jessie J. Rossman (BBO #670685)
Daniel L. McFadden (BBO #676612)
Ingrid Sydenstricker (BBO #718298)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF MASSACHUSETTS, INC.
One Center Plaza, Suite 850
Boston, MA 02108
(617) 482-3170
jrossman@aclum.org
dmcfadden@aclum.org
isydenstricker@aclum.org

*Counsel for Plaintiff*

Dated: April 16, 2026

<u>**Certificate of Service**</u>

I, Daniel L. McFadden, hereby certify that this document will be electronically served on all parties through the court's CM/ECF system.

Dated: April 16, 2026                              */s/ Daniel L. McFadden*
                                                   Daniel L. McFadden