**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| CARLOS SEBASTIAN ZAPATA RIVERA, Petitioner, v. DAVID WESLING, Acting Field Office Director, *et al.*, Respondents. | C.A. No. 26-40061-MRG |

## PETITIONER'S MEMORANDUM OF LAW IN OPPOSITION TO RESPONDENTS' MOTION TO DISMISS

The Court already ruled that ICE placed Mr. Zapata Rivera in custody after he engaged in First Amendment-protected petitioning activities.  No ICE official has ever been willing to state under oath that there was *any* non-retaliatory motive for doing so.  And when discovery on that subject came due, ICE abruptly reversed its actions and immediately moved to dismiss the case as moot.  ICE did not admit its prior actions were wrong.  It did not offer any explanation for reversing those actions.  It has not agreed to any court-ordered limitations on taking further adverse actions in the future.  It appears that ICE simply wants out of the litigation.

ICE's retreat is, of course, a significant victory for Mr. Zapata Rivera.  His GPS monitor is removed.  He is disenrolled from the Intensive Supervision Appearance Program ("ISAP").  He has deleted ICE's tracking app from his phone.  He is no longer subject to travel restrictions within the United States.  His next check-in is postponed until 2027.

1

But at the same time, the issues raised by this case are far from resolved, and Mr. Zapata Rivera remains at elevated risk that ICE's unlawful conduct will resume.  Mr. Zapata Rivera is still in open removal proceedings and thus vulnerable to ICE's control.  There is no evidence that ICE's retaliatory animus has dissipated.  That animus is likely to persist (and possibly expand) as Mr. Zapata Rivera takes additional protected acts in his ongoing civil case.  If this habeas case is dismissed now as moot, ICE has not acknowledged any limitations that would prevent it from restarting its campaign of retaliation and placing Mr. Zapata Rivera right back in some form of unlawful custody the moment the dismissal order enters or any time thereafter.

This vulnerability is particularly concerning because there is no guarantee that this Court could remedy any resumption of custody after dismissal.  For example, if ICE re-initiates custody through an arrest, it might transfer Mr. Zapata Rivera out of the District of Massachusetts—and thus likely beyond this Court's habeas authority—before anyone even knows he's gone.  This is not a hypothetical concern.  *See, e.g.*, *Öztürk v. Trump*, 777 F. Supp. 3d 26, 30-32 (D. Mass. 2025) (immediately following no-notice arrest, detainee transported to New Hampshire, then Vermont, then Louisiana, and counsel were not informed of her location until after she was in Louisiana).

The Court has jurisdiction over this case because Mr. Zapata Rivera was in custody in Massachusetts at the time it was filed.  The only question is whether the case has been rendered moot by subsequent events.  As described below, it has not.  Among other reasons, it is well recognized that the government cannot moot a case through voluntary cessation of the challenged conduct.  *See, e.g.*, *FBI v. Fikre*, 601 U.S. 234, 241 (2024).  And even if it could, this case is not moot because the challenged government actions are capable of repetition yet evading review.  *See, e.g.*, *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016).  The motion to dismiss should therefore be denied.

## **FACTUAL BACKGROUND**

Counsel will not restate the entire factual background, given the Court's familiarity and the extensive prior briefing. *See, e.g.*, Mem. in Support of Pet. (D.E. 15) at 2-7. In summary, ICE initiated an escalating campaign of retaliation against Mr. Zapata Rivera in response to his First Amendment-protected petitioning activity. *See id.* For almost three years, ICE had not required Mr. Zapata Rivera to appear at check-ins, wear a GPS monitor, or participate in an Alternative to Detention ("ATD") program. *See id.* at 3. But when Mr. Zapata Rivera sent an evidence preservation request to ICE, about a week later ICE suddenly ordered him without explanation to appear for a check-in at ICE's offices. *See id.* at 4. Mr. Zapata Rivera then sued an ICE agent for strangling him unconscious in his car, *see* Compl. (D.E. 1), *Zapata Rivera v. Jackson*, No. 25-12850-MRG (D. Mass.), and just days later ICE ordered the check-ins to increase in number and frequency. *See id.* He then served court-authorized subpoenas on DHS and the ICE agent, and a few days later ICE abruptly ordered him to report to its contractor BI for the addition of 24/7 GPS monitoring and strict ISAP conditions. *See id.* at 4-5. Throughout this process, ICE's retaliatory motivation was evinced not only by the close temporal proximity between action and reaction, but also by ICE's constant stream of shifting and false explanations, its deviations from normal procedures, and its statements suggesting retaliatory animus. *See id.* at 6-7, 17-20.

This case was properly before the Court at the time it was filed. The Court has already ruled that ICE's use of GPS and ISAP conditions placed Mr. Zapata Rivera in custody. *See id.* at 8-10; Mar. 19, 2026 Tr. at 4:10-14 (ruling that conditions amounted to custody). He properly challenged that custody by filing this habeas petition in mid-February, shortly after the GPS and ISAP conditions were applied. *See* Pet. (D.E. 1); *see also* 28 U.S.C. § 2241(c)(3) (habeas is a remedy when "in custody"). The Petition pleads a single count of retaliation in violation of the

First Amendment. *See* Pet. (D.E. 1) ¶¶72-75. The government submitted a legal memorandum opposing the Petition, *see* Opp. Mem. (D.E. 14), but did not submit any evidence concerning its motives or any other subject.

The government's window to maintain that secrecy has been rapidly closing. In March, the Court held a hearing and ruled that Mr. Zapata Rivera "has plausibly alleged a potential First Amendment retaliation violation." S*ee* Mar. 19, 2026 Tr. at 28:8-9. The Court ordered an evidentiary hearing "to hear from decision-makers regarding the basis for their decisions and to permit appropriate examination of whether legitimate, non-retaliatory reasons support the timing and nature of the conditions imposed." *Id.* at 27:20-24. This information is relevant to "what the Court views as the central issue of this petition: How respondents intend to meet their burden of demonstrating that the challenged conditions would have been imposed in the manner they were imposed, irrespective of Petitioner's protected activity." *Id.* at 27:13-17. In advance of the evidentiary hearing, the Court "allow[ed] Petitioner the benefit of . . . limited discovery to further explore the issue of retaliatory motive for his First Amendment claim." *See* Mar. 19, 2026 Elec. Order (D.E. 23). Mr. Zapata Rivera then proposed targeted discovery including one interrogatory and four document requests to ICE, *see* Discovery Proposal (D.E. 27), and the Court approved those proposals without modification at a March 27 status conference. The parties agreed to a production deadline on April 13. *See* Opp. to Disc. Ext. (D.E. 32) at 1.

Whatever is in that discovery, ICE is clearly not eager to produce it. When April 13 arrived, the government filed a motion to extend its production deadline to Friday, April 17. *See* Ext. Mot. (D.E. 31). Mr. Zapata Rivera agreed to an extension to Tuesday, April 14, but otherwise opposed. *See* Opp. to Disc. Ext. (D.E. 32) at 1. When the Court did not immediately grant the government's requested extension, an agent for the government suddenly called Mr. Zapata Rivera in the middle

4

of the workday on Tuesday and ordered him to report to ICE in Burlington that same afternoon. *See* Status Rpt. Ex. 1 (D.E. 35-1) (call log showing ICE's calls at 11:42 and 11:43 a.m.).[1] One of his immigration counsel dropped everything to meet him there. *See* Third Rosenbaum Decl. (D.E. 36) ¶3.   At Burlington, ICE removed Mr. Zapata Rivera's GPS bracelet, told him he was disenrolled from ISAP, and scheduled his next check-in for 2027. *See id.* ¶¶6-8. ICE did not provide any explanation for these actions. *See id.* ICE also did not provide any documentation of what it was doing (besides a notice of the next check-in date) and gave no assurances that it would not reverse course and restore these conditions at a later time. *See id.*

ICE then immediately attempted to leverage its cessation to justify a discovery stay and mootness dismissal. *See* Mot. to Dismiss and Stay Discovery Responses (D.E. 34). Along with that motion to dismiss, the government filed a declaration from ICE Assistant Field Office Director Mark Anzelmo. *See* First Anzelmo Decl. (D.E. 34-1). That declaration is most notable for what it *does not* say. It does not say why ICE initiated check-ins, GPS, and ISAP against Mr. Zapata Rivera after he took protected acts. It does not say whether ICE has investigated those events, or whether ICE located any evidence of retaliation by its personnel. It does not say that ICE's actions were wrong or unlawful. It does not say why ICE abruptly removed the GPS, ISAP, and check-in restrictions. It does not say that ICE will not take Mr. Zapata Rivera back into custody after the case ends. And it does not say that ICE has taken any steps to prevent its personnel from engaging in further retaliatory acts at any future time.

The next day, Mr. Zapata Rivera filed a status report explaining that the government had not made any showing sufficient to moot the case, including because the voluntary cessation

---

[1] The Court ultimately allowed ICE's full requested extension, but by that point ICE had already called Mr. Zapata Rivera into its offices. *See* Apr. 14, 2026 Elec. Order (D.E. 33) (granting government's extension at 1:10 p.m.).

doctrine precludes mootness where "'a defendant might suspend its challenged conduct after being sued, win dismissal, and later pick up where it left off.'" *See* Status Rpt. (D.E. 35) (quoting *Fikre*, 601 U.S. at 241). In response, the government filed a second declaration from Mr. Anzelmo purporting to add new terms to the release. *See* Second Anzelmo Decl. (D.E. 38-1). Specifically, Mr. Anzelmo's second declaration attempts to bargain for mootness by adding that "ERO Boston does not intend to place the Petitioner on the ATD program, or place him on a GPS in the future unless the Petitioner is arrested for, or convicted of criminal conduct, he fails to report for one of his yearly check-ins, or he becomes subject to a final order of removal." *See id.* ¶3. The government admits this new assertion of what ICE presently "intend[s]" was added specifically in response to Petitioner's mootness arguments. *See* Cover Memo (D.E. 38). Presumably ICE's intentions could change at any time. And beyond that assertion of present intent, the new declaration does not contain any other new information, explanations, commitments, or proposals. Critically, Mr. Anzelmo's second declaration does not make *any* statements—not even a statement of "intent"—that ICE will not arrest Mr. Zapata Rivera if this case is dismissed.

Indeed, if anything, Mr. Anzelmo's second declaration only heightens concerns regarding retaliation. If the criteria for being placed on GPS and ISAP are (a) arrest/conviction for criminal conduct, (b) failure to report for a check-in, or (c) being subjected to a final removal order, *see* Second Anzelmo Decl. (D.E. 38-1) ¶3, then Mr. Zapata Rivera *has never met* any of those criteria. He was not arrested for or convicted of any crime. Pet. ¶20. His removal proceedings are open, with no hearing until 2028. *See* Sydenstricker Decl. Ex. F (D.E. 2-6) (ISAP documents listing hearing date). And he never missed any check-ins—to the contrary, ICE put Mr. Zapata Rivera on GPS and ISAP when he had literally just *appeared* for four scheduled check-ins in under three months. *See* Rosenbaum Decl. (D.E. 2-8) ¶¶3-16. ICE ordered Mr. Zapata Rivera into GPS and

ISAP monitoring even though they had no proper basis to do so under their own standards, which is strong evidence of animus. Consequently, far from proving mootness, Mr. Anzelmos's new declaration proves that Mr. Zapata Rivera was already targeted for unlawful retaliation. If ICE escapes the supervision of this Court without a judgment to limit its illegal behavior, the future risks to Mr. Zapata Rivera will be extreme.

## ARGUMENT

The Court should deny the government's motion to dismiss the petition. The government's arguments appear to conflate two distinct issues: on the one hand, whether the Court has jurisdiction over the petition, and, on the other, whether subsequent events have rendered the petition moot. As explained below, these are separate questions, and the government is wrong about both. This Court has jurisdiction because it already determined Mr. Zapata Rivera was "in custody" at the time of filing. And the petition is not moot for several reasons: Voluntary cessation does not moot a case. A case is not moot where the challenged conduct is capable of repetition yet evading review. And a case is not moot where the defendant has not completely and irrevocably eradicated the effects of the challenged conduct. The motion should be denied.

> A. *This Court has jurisdiction because Mr. Zapata Rivera was in custody at the time the Petition was filed.*

The government argues—seemingly interchangeably—that Mr. Zapata Rivera's release precludes the petition because it both strips the Court of its habeas authority under § 2241 and renders the petition moot. Yet, nothing about the changed circumstances in this case impact the Court's habeas review over this matter. The government's contention that the Court "now lacks jurisdiction" under § 2241 because Mr. Zapata Rivera is no longer in custody is fundamentally incorrect.

Standing and subject matter jurisdiction are ordinarily determined at the outset of the case, based upon the facts existing at the time of filing. *See, e.g.*, *Steir v. v. Girl Scouts of the USA*, 383 F.3d 7, 15 (1st Cir. 2004) ("Standing in the jurisdictional sense is based on the facts as they existed at the time the complaint was filed."); *Sallen v. Corinthians Licenciamentos LTDA*, 273 F.3d 14, 23 (1st Cir. 2001) ("The basic framework for analyzing federal subject matter jurisdiction has long been settled.   Jurisdiction depends upon the facts as they existed when the complaint was brought.").  These concepts are distinct from mootness, which deals with the effects of subsequent events on an ongoing case. *See Friends of the Earth, Inc. v. Laidlaw Env'l Servs., Inc.*, 528 U.S. 167, 190-92 (2000) (explaining difference between standing at the outset and mootness arising at a later stage).

Consequently, whether a petitioner is "in custody" for the purposes of invoking habeas jurisdiction is determined based on the circumstances at the time the petition was filed. *See Leitao v. Reno*, 311 F.3d 453, 455 (1st Cir. 2002); *see also Tinder v. Paula*, 725 F.2d 801, 803 (1st Cir. 1984) (holding that, in a Section 2254 habeas proceeding, "[c]ustody is determined from the date that a habeas petition is first filed."). This means that a petitioner who "was in custody when he filed his habeas petition" has done "enough to satisfy the jurisdictional custody requirement of 28 U.S.C. § 2241." *Leitao*, 311 F.3d at 455 (citing *Spencer v. Kemna,* 523 U.S. 1, 7 (1998)).  Here, the Court has already found that Mr. Zapata Rivera was "in custody" at the time of filing for the purposes of habeas. *See* Mar. 19, 2026 Tr. at 4:10-14 ("I do not need further argument on whether the petitioner's current conditions amount to the functioning equivalent of custody for the purposes of habeas jurisdiction. I find that they do.").  Accordingly, the Court has habeas jurisdiction, and

the question is simply whether subsequent events have rendered the case moot.[2]  As explained below, they have not.

   *B. The petition is not moot because the voluntary cessation doctrine applies.*

   The government argues the petition is now moot because ICE subsequently released Mr. Zapata Rivera from custody.  However, "[i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth*, 528 U.S. at 189 (internal quotation marks omitted).  This doctrine recognizes that "a defendant might suspend its challenged conduct after being sued, win dismissal, and later pick up where it left off; it might even repeat this cycle as necessary until it achieves all of its allegedly unlawful ends." *See Fikre*, 601 U.S. at 241 (internal quotation marks omitted). Consequently, a defendant cannot "automatically moot a case by the simple expedient of suspending its challenged conduct after it is sued." *See id.* (internal quotation marks omitted). Rather, the party asserting mootness bears the "formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."  *See Friends of the Earth*, 528 U.S. at 190.  A defendant cannot meet this burden if "(1) 'a defendant voluntarily ceases the challenged practice in order to moot the plaintiff's case' and (2) 'there exists a reasonable expectation that the challenged conduct will be repeated after the suit's dismissal.'" *See Presidents' All. on Higher Educ. & Immigr. v. Noem*,--- F.Supp.3d ----, 2026 WL 788185, at *10 (D. Mass. Mar. 20, 2026) (quoting *Nat'l Assoc. of Gov't Emps. v. Yellen*, 120 F.4th 904, 912

---

[2] Cases cited by the government are not to the contrary.  In *Alawieh v. Tweedie*, for example, the issue was not merely that the petitioner was released, but rather that the manner of release was deportation into a different country, such that the court concluded it lacked authority to continue in habeas based on what it viewed as limitations on habeas authority to order re-entry into the United States from abroad.  *See* 808 F. Supp. 3d 205, 212-13 (D. Mass. 2025).  No such questions arise in this case.

(1st Cir. 2024)). This doctrine applies in the habeas context where the petitioner is released but remains vulnerable to re-detention if the case is dismissed. *See*, *e.g.*, *Al Jaber v. Sessions,* No. 17-CV-12520-IT, 2018 WL 11484075, at \*2 (D. Mass. Aug. 17, 2018); *Jimenez v. Nielsen*, 334 F. Supp. 3d 370, 393 (D. Mass. 2018); *Farez-Espinoza v. Napolitano*, No. 08-11060, 2009 WL 1118098, at \*4-7 (S.D.N.Y. Apr. 27, 2009).

The government fails to meet its heavy burden. As to the first prong, neither the motion to dismiss nor the Anzelmo Declaration accompanying it (D.E. 34 & 34-1) provide *any* reason for ceasing the challenged conduct. Mr. Zapata Rivera then filed an initial response to the motion articulating the exact standard above (D.E. 35). In response, the government submitted a second Anzelmo Declaration (D.E. 38-1), but again provided *no explanation whatsoever* for ceasing the challenged conduct. It appears the government has affirmatively declined to provide the reason for ceasing the challenged conduct, and certainly has provided no reason independent its apparent desire to escape accountability in this litigation. *See*, *e.g.*, *Al Jaber*, 2018 WL 11484075, at \*2.

There is strong circumstantial evidence that the government did, in fact, release Mr. Zapata Rivera specifically to moot the case. The parties had agreed that the government would produce its discovery on Monday, April 13. *See* Opp. to Disc. Ext. (D.E. 32) at 1. When Monday arrived, however, the government moved to extend that deadline to Friday, April 17. *See* Ext. Mot. (D.E. 31). Petitioner agreed to an extension to Tuesday, April 14, but otherwise opposed. *See* Opp. to Disc. Ext. (D.E. 32) at 1. When the Court did not immediately grant the government's requested extension beyond Tuesday, an agent for the government cold-called Mr. Zapata Rivera in the middle of the workday and ordered him to report to ICE by mid-afternoon. *See* Status Rpt. Ex. 1 (D.E. 35-1); Rosenbaum Decl. (D.E. 36) ¶3. It is quite clear that the government was trying to manufacture an argument for mootness before its discovery deadline might come due at the end of

the day.  The government then almost immediately moved to dismiss the case.  This is the very type of strategic conduct the voluntary cessation doctrine was designed to address. *See Presidents' All. on Higher Educ.*, 2026 WL 788185, at *10 ("This rule exists to stop a scheming defendant from trying to immunize itself from suit indefinitely by unilaterally changing its behavior long enough to secure a dismissal and then backsliding when the judge is out of the picture." (internal quotation marks and brackets omitted)).

As to the second prong, there is clearly good reason to believe that the challenged conduct will be repeated if the case is dismissed.  The Court has already ruled that Mr. Zapata Rivera has "plausibly alleged a potential First Amendment retaliation violation" by the government.  S*ee* Mar. 19, 2026 Tr. at 28:8-9.  The government has never offered any evidence of any non-retaliatory motive.  The two Anzelmo declarations do not provide any non-retaliatory reason for the challenged conduct, do not admit the conduct was wrong, and do not assert the existence of any internal safeguards to prevent the conduct from recurring.  If anything, the second Anzelmo Declaration *reinforces* that ICE's motives have been retaliatory by identifying triggers for the challenged actions that Mr. Zapata Rivera has never met.  *See* Second Anzelmo Decl. (D.E. 38-1) ¶3.  The fact that Mr. Zapata Rivera has never met ICE's own asserted criteria for applying GPS and ISAP, as stated in ICE's own declaration, and yet was nevertheless subjected to these restrictions, is strong evidence that ICE has been acting with retaliatory animus.  *See, e.g.*, *Ercelik v. Hyde*, No. 25-11007, 2025 WL 1361543, at *12 (D. Mass. May 8, 2025) (finding detention "contrary to the Government's own policy initiatives" to be evidence of retaliatory animus).

There is every reason to believe that ICE's retaliatory animus will persist and expand.  ICE's unlawful actions in this case were triggered by Mr. Zapata Rivera's protected acts in connection with his lawsuit against an ICE agent: sending an evidence preservation request, filing

11

the complaint, and serving Rule 45 subpoenas. That case remains in its early stages. Mr. Zapata Rivera filed his Amended Complaint naming defendant Jackson in early April, *see* Am. Cmplt. (D.E. 21), *Zapata Rivera v. Jackson*, No. 25-13850-MRG (D. Mass.), and Mr. Jackson was recently served. In the months and years to come, Mr. Zapata Rivera will continue to undertake protected acts in that litigation very similar to those that triggered the current retaliation, such as opposing any motion to dismiss, deposing ICE personnel, taking written discovery from parties and non-parties, and potentially amending the complaint to add additional claims and/or defendants. And ICE personnel will have strong incentives—such as avoiding depositions, trial, and possibly individual liability—for unlawfully pressuring Mr. Zapata Rivera to abandon the suit, or to absent him from the District to frustrate his participation. Thus, it is entirely reasonable to expect that Mr. Zapata Rivera will continue to be targeted for retaliation, and ICE has failed to prove otherwise.[3]

Nothing in the two Anzelmo declarations (D.E. 34-1 & 38-1) assuages these concerns. Neither declaration acknowledges any limitations on ICE's authority to act against Mr. Zapata Rivera. Neither declaration suggests that any safeguards are in place to prevent further retaliation. Neither declaration states that ICE has investigated the retaliation, identified the bad actors, and removed them from positions of authority over Mr. Zapata Rivera. Neither declaration says

---

[3] It is also telling that Mr. Zapata Rivera's retaliatory detention does not appear to be an isolated incident. In California, ICE arrested a plaintiff in an ongoing civil rights action challenging the conduct of immigration officers during raids in Los Angeles. *See* Press Release, "ACLU Statement on DHS Retaliatory Arrest of ICE Raids Plaintiff," (Apr. 22, 2026), https://www.aclusocal.org/press-releases/aclu-statement-on-dhs-retaliatory-arrest-of-ice-raids-plaintiff/. Prior to his sudden arrest, the plaintiff had been released on bond by an Immigration Judge and had regularly reported to ISAP for nine months. *See* Apr. 23, 2026 Order (D.E. 20), *Villegas Molina v. Mullin*, No. 26-04091 (C.D. Cal.) at 2. The U.S. District Court for the Central District of California entered a Temporary Restraining Order requiring his release last week. *See id.* at 8.

anything about whether ICE will arrest Mr. Zapata Rivera at any time or for any reason. And the initial declaration—which presumably reflected ICE's actual thinking—made no statements about whether ICE would again subject Mr. Zapata Rivera to check-ins, GPS, and ISAP. The second declaration added statements about that issue expressly for the purpose of trying to clear the mootness bar raised by Mr. Zapata Rivera when he objected to dismissal. *See* Cover Memo (D.E. 38). Those additional statements do not make any continuing commitments. *See* Second Anzelmo Decl. (D.E. 38-1) ¶3. Mr. Anzelmo merely asserts that ICE does not presently "intend" to restore the conditions. *See id.* Given that this purported intent was expressed solely for the purpose of securing a dismissal, ICE's "inten[tion]" could obviously change after it gets what it wants, or in response to additional protected conduct, or if new leadership assumes control of Boston ERO, or for innumerable other reasons. None of this is sufficient to meet ICE's "formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *See Friends of the Earth*, 528 U.S. at 190.

Courts generally find sparse declarations like these insufficient to meet the government's heavy burden. In *FBI v. Fikre*, for example, the plaintiff alleged that he was placed on a "No Fly List" for "constitutionally impermissible reasons." *See* 601 U.S. at 239. The government tried to moot the case by removing the plaintiff from the list and then submitting a declaration from a knowledgeable federal official, who stated that the plaintiff "will not be placed on the No Fly List in the future based on the currently available information." *See id.* at 240. The District Court granted the government's motion to dismiss as moot, the Ninth Circuit reversed, and the Supreme Court unanimously affirmed the Ninth Circuit. *See id.* at 240, 245. The Supreme Court explained that "the government's sparse declaration" did not satisfy its "formidable burden" to prove that "no reasonable expectation remains that it will return to its old ways." *See id.* at 241-42; *see also*

13

*Howard v. Aetna Life Ins. Co.*, No. 22-01505, 2024 WL 1098789, at *8 (C.D. Cal. Feb. 26, 2024) (defendant's statement that it did "not currently intend" to change new policy did not overcome the voluntary cessation doctrine, because "[c]urrent intent does not evidence future intent").[4] Here, too, the government has not met its burden, and its voluntary cessation does not moot the case.[5]

C. *The petition is also not moot because Respondents' conduct is capable of repetition yet evading review.*

While the Court may find that the petition is not moot based on voluntary cessation alone, the petition is also not moot because the government's conduct is capable of repetition yet evading review. This exception to mootness applies when (1) "the challenged action is in its duration too short to be fully litigated prior to cessation or expiration," and (2) "there is a reasonable expectation that the same complaining party will be subject to the same action again." *See Kingdomware*, 579 U.S. at 170 (internal quotation marks and brackets omitted). The second prong is met for the reasons already described above. The first prong is also met because the adverse actions against Mr. Zapata Rivera do not need to last long enough to be fully litigated in order to constitute

---

[4] Just this week, the Supreme Court rejected the New Jersey Attorney General's assertion of mootness where he offered to withdraw the challenged portions of a subpoena, but reserved the right to potentially seek similar information through a separate subpoena at a later time. *See First Choice Women's Res. Ctrs., Inc. v. Davenport*, 2026 WL 1153029, at *12 (S. Ct. Apr. 29, 2026). Similarly, in 2017, the Supreme Court found that a change in state policy did not moot a case, where it was not "absolutely clear" that the state "could not revert" back to the prior policy. *See Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 457 n.1 (2017).

[5] By contrast, when courts have found that the government has proved mootness after discontinuing the challenged conduct, it is generally based on objective factual information that is unlikely to change. In *Ramos-Ramos v. Jordan-Conde*, for example, the First Circuit found a case was moot where the defendant admitted error and instituted new policies to comply with recent Supreme Court decision. *See* 171 F.4th 438, 443-44 (1st Cir. 2026). And in *Lowe v. Gagne-Holmes*, the First Circuit dismissed a challenge to a Covid vaccine mandate as moot after the mandate had been repealed, finding that it was "extremely unlikely" that the policy would be reinstated given the vastly changed circumstances of the pandemic including reduced disease prevalence, increased vaccination rates, and improved treatment options. *See* 126 F.4th 747, 756-58 (1st Cir.), *cert. denied sub nom. Lowe v. Gagne-Holmes*, 145 S. Ct. 2795 (2025).

unlawful retaliation.  *See, e.g.*, *Huffman v. City of Boston*, No. 21-10986, 2022 WL 2308937, at *4 (D. Mass. Jun. 27, 2022) (explaining that, in the First Amendment retaliation context, "adverse action need only be more than 'de minimis,' which the First Circuit has defined simply as sufficient to chill a 'reasonably hardy' person, or 'a person of ordinary firmness,' from continuing to exercise their constitutional rights" (quoting *Barton v. Clancy*, 632 F.3d 9, 29 (1st Cir. 2011)).   Here, ICE began retaliating against Mr. Zapata Rivera in December, placed him in custody in February, and then released him from custody in April—a period of roughly four months.  *See* Rosenbaum Decls. (D.E. 2-8, 16, 36).  Although these actions are discouraging and intimidating, the Court did not have time to fully decide the case before they ceased.  This cycle can repeat—and is likely to repeat—as Mr. Zapata Rivera takes additional protected acts in his ongoing case.  The situation thus falls squarely within the mootness exception for conduct capable-of-repetition-yet-evading-review. *See Al Jaber*, 2018 WL 11484075, at *2 (applying the capable of repetition but evading review exception to mootness because the petitioner was left vulnerable to arrest at any time, which would result in the same constitutional challenges).

> *D. The petition is also not moot because Mr. Zapata Rivera remains subject to collateral consequences of his custody.*

Lastly, the petition is not moot because Mr. Zapata Rivera remains subject to collateral consequences as a result of his custody.  Mootness is barred where collateral consequences linger as a result of unlawful conduct, including in the habeas context.  *See Leitao*, 311 F.3d at 456 (applying collateral consequences exception to mootness where habeas petitioner remained subject to additional restrictions after his release); *see also Town of Barnstable v. O'Connor*, 786 F.3d 130, 142 (1st Cir. 2015) ("Intervening events must 'have completely and irrevocably eradicated the effects' of the parties' conduct in order for a case to be deemed moot." (quoting *Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979))). Here, Mr. Zapata Rivera was subject to electronic

15

monitoring, including 24/7 GPS monitoring and an app installed on his phone. ICE now has sensitive location data as to Mr. Zapata Rivera's exact movements and whereabouts over the course of roughly two months, including information pertaining to his employment, his family's medical care, and other sensitive topics. In addition, the government also has sensitive information it collected through the ISAP program, including Mr. Zapata Rivera's answers to dozens of invasive questions and information about his social media accounts. *See* Rosenbaum Decl. (D.E. 2-8) ¶¶18-19; Rosenbaum Decl. (D.E. 16) ¶4. ICE has not articulated any limitations on the retention or use of this unlawfully collected information, which paints a mosaic of many of the most intimate details of Mr. Zapata Rivera's life. The limitless retention and use of this data is seriously prejudicial to Mr. Zapata Rivera, especially considering that the data was obtained unlawfully and without a warrant in violation of both his First and Fourth Amendment rights. *See Grady v. North Carolina*, 575 U.S. 306, 309-10 (2015) (per curiam) (requirement to wear tracking device in civil context constitutes Fourth Amendment search); *see also Carpenter v. United States*, 585 U.S. 296, 312 (2018) (location tracking invaded reasonable expectation of privacy when it functioned "as if [the government] had attached an ankle monitor to the phone's user"). The situation is particularly inappropriate where Mr. Zapata Rivera is in active civil litigation against ICE personnel, and the agency has collected a vast trove of information about him outside of the lawful discovery process and in violation of the U.S. Constitution. *Cf.* Fed. R. Civ. P. 26.

## CONCLUSION

Mr. Zapata Rivera remains at risk. The Court has broad equitable authority to fashion remedies that will ensure his rights are protected. *See Schlup v. Delo*, 513 U.S. 298, 319 (1995) (habeas is an "equitable remedy"); *see also Boumediene v. Bush*, 553 U.S. 723, 779-80, 787 (2008) (explaining that "common-law habeas corpus was, above all, an adaptable remedy" in which the

16

"court's role was most extensive in cases of pretrial and noncriminal detention," and consequently when habeas is properly invoked "the judicial officer must have adequate authority . . . to formulate and issue appropriate orders of relief"). Accordingly, because the Court has jurisdiction over the petition, and because the petition is not moot, Mr. Zapata Rivera respectfully requests the Court deny the motion to dismiss.

Respectfully submitted,

Carlos Sebastian Zapata Rivera ,

By His Attorneys,

*/s/ Daniel L. McFadden*
Jessie J. Rossman (BBO # 670685)
Daniel L. McFadden (BBO # 676612)
Ingrid Sydenstricker (BBO # 718298)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF
MASSACHUSETTS, INC.
One Center Plaza, Suite 850
Boston, MA 02108
(617) 482-3170
jrossman@aclum.org
dmcfadden@aclum.org
isydenstricker@aclum.org

DATED:  May 1, 2026

17

### Certificate of Service

I, Daniel L. McFadden, hereby certify that this document will be served on all parties through the Court's CM/ECF system.

Dated: May 1, 2026                                   */s/ Daniel L. McFadden*
                                                              Daniel L. McFadden